**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GERALDINE MINITREZ,

Plaintiff,

vs. CIVIL NO. 11-768 MV/CG

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiff Geraldine Minitrez's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 18), Plaintiff's *Memorandum in Support of Motion to Reverse or Remand Agency Decision*, (Doc. 19), Defendant's *Response to Plaintiff's Motion to Reverse or Remand*, (Doc. 20), and Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 21).

Geraldine Minitrez is a fifty-two year old woman who applied for social security disability insurance benefits on May 14, 2008. Administrative Record ("AR") at 24. She alleges that she has been disabled since February 23, 2008, due to several physical and mental impairments including rheumatoid arthritis, degenerative disc disease, asthma, depression, and anxiety. Administrative Law Judge ("ALJ") Ann Farris denied her application for benefits on March 19, 2010. *Id*. at 32. Ms. Minitrez argues that the ALJ failed to determine whether her depression and anxiety were severe impairments and failed to develop the record or order a consultative exam regarding her mental impairments. (Doc. 19 at 4-8). She further claims that the ALJ failed to properly support her decision that Ms. Minitrez was capable of returning to her past relevant work as a front office worker. (*Id*. at 8-11). Defendant contends that Ms. Minitrez has not shown that her depression and anxiety

were severe impairments and that the ALJ need not have considered them. (Doc. 20 at 4-7). He further argues that the ALJ applied the correct legal standards in finding that Ms. Minitrez could still perform her past relevant work. (*Id*. at 7-9).

Having considered the parties' filings, the relevant law, and having meticulously reviewed and considered the entire administrative record ("AR"), the Court finds that the ALJ did not apply the correct legal standards in reviewing Ms. Minitrez's application for disability insurance benefits. The Court therefore **RECOMMENDS** that the motion to reverse or remand be **GRANTED**.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity." At the second step, the claiming must show that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

### a. Medical Background

Geraldine Minitrez is a fifty-two year old woman who claims to suffer from a variety of physical and mental impairments. The vast majority of Plaintiff's medical records reflect treatment for physical impairments, including rheumatoid arthritis, asthma, obesity, degenerative joint disease of the right knee, and degenerative disc disease. *See, e.g.*, AR at 26-31 (ALJ's decision denying benefits reviews Plaintiff's physical conditions, particularly with regard to the serious functional limitations caused by her back and knee problems). Plaintiff does not take issue with the ALJ's consideration of her physical impairments and has only challenged the ALJ's failure to consider whether Ms. Minitrez's anxiety and depression constitute severe impairments and whether they should have been included in her RFC assessment. (Doc. 19 at 4-9). The Court will therefore restrict its analysis to the record as it pertains to Ms. Minitrez's anxiety and depression.

Although Ms. Minitrez claims that she has suffered from anxiety and depression for several years, references to both conditions arise haphazardly in the record. Ms. Minitrez did not list either as a disabling condition when she first applied for social security disability benefits in June of 2008. AR at 141. However, she began listing depression as a disabling condition in subsequent reports. In November of 2008, she amended her application to state that she had been suffering from depression since August of 2008, that it caused her

to cry a lot, and that she was taking Wellbutrin to treat the condition. *Id*. at 188.[2] In a "function report" from December of 2008, Ms. Minitrez claimed that she was feeling "really down and depressed" and that she would sometimes sit on her bed and cry. *Id*. at 195. She also complained of depression and frequent crying spells in a disability report from April of 2009. *Id*. at 207. That same month, Ms. Minitrez's attorney wrote a letter to the Social Security Administration advising that Ms. Minitrez was suffering from depression and frequent crying spells and he requested that the agency schedule a psychological evaluation to assess the extent of her depression. (Doc. 19-2 at 1). It appears that the Administration either denied this request or took no action on it.

The medical records leading up to the ALJ's decision reflect very little treatment for either depression or anxiety. Ms. Minitrez directs the Court to a progress report from October, 2008, wherein Dr. Ravi Bhasker - Ms. Minitrez's treating physician since 2003 - stated that Ms. Minitrez was "starting to have anxiety and depression." *Id*. at 306. Dr. Bhasker also noted that Ms. Minitrez was complaining of "lower back pain/depression/heart burn" at a follow-up appointment November of 2008. AR at 300. Dr. Bhasker prescribed Wellbutrin to help treat the anxiety and depression. *Id*. Records indicate that she was also prescribed Fluoxetine in October of 2008. *Id*. at 216.[3] No other medical records reflect treatment for anxiety or depression prior to the ALJ's decision denying benefits.

**b. <u>Hearing Before ALJ</u>**

Ms. Minitrez appeared before ALJ Farris for a hearing on January 20, 2010. *Id*. at

---

[2] Welbutrin is an antidepressant that is prescribed to treat depression as well as seasonal affective disorder. *See* United States National Library of Medicine, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000970/

[3] Fluoxetine, better known as Prozac, is a drug used to treat mental illnesses such as depression and obsessive compulsive disorder. *See* United States National Library of Medicine, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000885/.

39. Ms. Minitrez was represented by counsel and a vocational expert ("VE") was present and testified as well. *Id*. Ms. Minitrez stated that she had not worked since her alleged onset date of February 23, 2008, due to severe pain in her back and knee, as well as anxiety and depression. *Id*. at 43. With regard to her physical impairments, she testified that she finds it difficult to take care of herself or accomplish even the most basic activities due to the constant pain. *See, generally, Id*. at 43-50, 53-56. She stated that she cannot sit or stand for more than ten minutes at a time due to the pain. *Id*. at 48-49, 50-51, 60.

With regard to the anxiety and depression, she stated that both conditions negatively affected her every-day life and prevented her from returning to work. *Id*. at 43. She was depressed because her physical impairments prevented her from being able to enjoy or play with her grandchildren and prevented her from helping out her husband. *Id*. at 49. The depression caused her to cry frequently and caused her to isolate herself; she didn't like being around people. *Id*. at 43, 50. Her husband would sometimes find her alone in their bedroom crying because of the depression. *Id*. at 49. She claimed that the inability to be around people was one reason she stopped going to church services. *Id*. at 50-51. Ms. Minitrez told the ALJ that the depression medication helped "somewhat" and that she had not sought counseling for the depression. *Id*. at 49.

In addition to the depression, Ms. Minitrez testified that she suffered from anxiety attacks which caused gastro-intestinal distress and would cause her to become short of breath. *Id*. at 50. The anxiety attacks either exacerbated or helped bring on asthma attacks. *Id*. at 47-48. She left her last job at G&J Brooks Enterprises - a grocery store - partially due to her anxiety and depression. *Id*. at 53-54. Having to deal with angry clients or customers would set off her anxiety and depression and for that reason she believed that she would not be able to return to her prior secretary jobs at Presbyterian Hospital in Socorro and

New Mexico State University. *Id*. at 55-57. She also testified that the depression and anxiety would prevent her from returning to her prior job as a teacher's assistant because she didn't think she would be able to handle interacting with the parents. *Id*. at 58-59.

The ALJ then posed a hypothetical question to the VE regarding Ms. Minitrez's ability to work. He asked the VE to imagine a person with Ms. Minitrez's education, age, and work history but with the following restrictions: i) she was limited to sedentary work, ii) she had to alternate between sitting and standing approximately every thirty minutes, iii) she could climb a limited number of stairs occasionally but could not kneel, crouch, or crawl, and iv) she had to avoid more than moderate exposure to pulmonary irritants such as dust, fumes, and gasses. *Id*. at 65. The ALJ made no reference to Ms. Minitrez's anxiety or depression and did not include any limitations flowing from either condition. The VE responded that a person with those limitations would still be able to hold a job as a front office worker. *Id*. at 65-66.

**c. <u>ALJ's Decision</u>**

ALJ Farris issued her decision denying Ms. Minitrez's application for disability benefits on March 19, 2010. *Id*. at 32. At the first step of the sequential evaluation process she found that Ms. Minitrez had not engaged in substantial gainful activity since the alleged onset date of February 23, 2008. *Id*. at 26. At the second stage of the process, the ALJ found that Ms. Minitrez had the following severe impairments: mechanical back pain with degenerative disc disease in the lumbar spine; and rheumatoid arthritis. *Id*. She discussed Ms. Minitrez's complaints regarding her high blood pressure, obesity, degenerative disc disease in the cervical spine, and carpal tunnel syndrome, but ultimately concluded that they were all "non-severe" impairments. *Id*. at 26-27. The ALJ made no mention of anxiety or depression and did not state whether she found those impairments to be severe, non-

severe, or not impairments at all.

The ALJ found that neither of the impairments met the definition under the Listings at step three of the sequential evaluation process and proceeded to discuss Ms. Minitrez's RFC assessment. *Id*. at 27. The ALJ provided the following RFC:

> [C]laimant has the residual functional capacity to perform less than the full range of sedentary work . . . except that she must alternate between sitting and standing approximately every 20 minutes; she can climb limited stairs occasionally; she cannot kneel, crouch, or crawl; and she must avoid more than moderate exposure to pulmonary irritants including dust, fumes, and gasses.

*Id*. In explaining her RFC assessment, the ALJ acknowledged that Ms. Minitrez had testified that she stopped working in part due to anxiety and depression and that she stopped going to church because she disliked being around people. *Id*. at 28. The ALJ made no further reference to anxiety or depression and did not address Dr. Bhasker's diagnosis of depression from 2008. *Id*. at 27-31. She did not explicitly state whether she found the complaints of anxiety or depression to be credible and did not explain whether she thought either condition had any affect on Ms. Minitrez's ability to work. *Id*. at 27-31. After establishing Ms. Minitrez's RFC, the ALJ found that she was capable of returning to her past relevant work as a front office worker. *Id*. at 31.

**d. <u>Post-Decision Medical Records and Proceedings</u>**

In the months following the decision denying benefits, Ms. Minitrez was examined by two other doctors, Dr. Karl Moedl and Dr. Cathy Simutis. (Doc. 19-1 at 2-8). Dr. Moedl focused on Ms. Minitrez's physical impairments while Dr. Simutis considered both her physical and mental impairments. Dr. Simutis noted that Ms. Minitrez began suffering from panic attacks and depression in 2006 and 2008, respectively. (*Id*. at 6). Medication did not help either condition though she did not seek counseling or psychotherapy. (*Id.*). Dr. Simutis reported that Ms. Minitrez was suffering from four or five anxiety attacks per week

and that "during a panic attack she sweats, trembles, has shortness of breath and has hot flashes." (*Id*. at 7). She also cried daily, felt worthless, and had lost interest in activities she used to enjoy. (*Id*.). Dr. Simutis diagnosed her with adjustment disorder with depressed mood and generalized anxiety disorder with panic attacks. (*Id*.). Dr. Bhasker reviewed Dr. Simutis' findings and concurred with her diagnosis. AR at 17. He further stated that "we do agree that her prognosis is poor and her ability to understand her problem is poor." *Id*.

Ms. Minitrez appealed ALJ Farris' decision denying benefits to the Social Security Appeals Council in April of 2010. *Id*. at 20. As part of her appeal she claims to have submitted Dr. Moedl and Dr. Simutis' reports as well as Dr. Bhasker's letter concurring with their assessments. *Id*. at 12. It is not entirely clear whether all three reports were sent to the Appeals Council or whether only Dr. Bhasker's concurrence letter was sent. *Id*. at 2 (in the decision denying Ms. Minitrez's appeal, the Council only stated that "[w]e also looked at correspondence from your physician Ravic [sic] Bhasker, M.D., dated July 12, 2010, and July 13, 2010 . . ."). Regardless, the Appeals Council disregarded the two reports because their findings were "about a later time and pertain[ ] to consultative examinations performed May 27, 2010 and June 7, 2010 . . . [they] do[ ] not affect the decision about whether you were disabled beginning on or before March 19, 2010." *Id*. The Appeals Council denied the appeal on July 7, 2011. *Id*. at 1.

Ms. Minitrez filed a new application for social security disability benefits immediately after her appeal was denied. She alleged an onset date of March 20, 2010, the day after ALJ Farris denied her first application for benefits. (Doc. 21-1 at 5). She alleged depression as a disabling condition in addition to her many physical impairments in her new application. The application was again assigned to ALJ Farris, who held a hearing on May 15, 2012. (*Id*.). ALJ Farris agreed that Ms. Minitrez's depression was a severe impairment

at step two and assigned interactive limitations in her RFC assessment based on the depression. (*Id*. at 7, 8). ALJ Farris relied on Dr. Simutis' May, 2010, assessment of Ms. Minitrez's mental health in finding that the depression was a severe impairment. (*Id*. at 8-9). Having found that Ms. Minitrez suffered from depression and having reevaluated the limiting effects of her physical impairments, the ALJ found Ms. Minitrez to be disabled and issued a fully favorable decision on June 1, 2012. (*Id*. at 11).[4]

**IV. <u>Analysis</u>**

Ms. Minitrez first argues that the ALJ erred at step two of the sequential evaluation process when she failed to determine whether her anxiety and depression constituted medically determinable impairments. (Doc. 19 at 4-6). She also argues that the ALJ failed in her duty to develop the record when she refused to order a psychological consultative exam to assess the severity of the two disorders. (*Id*. at 6-8). Ms. Minitrez concludes that these failures prevented the ALJ from properly assessing whether limitations attributed to the anxiety or depression should be included in the RFC assessment or the hypothetical question to the VE. (*Id*. at 5-6, 9).

Defendant responds that Ms. Minitrez failed to carry her burden of establishing that the anxiety or depression constituted severe impairments at step two of the sequential evaluation process. (Doc. 20 at 4-6). He further argues that the ALJ had no duty to further develop the record with regard to the anxiety or depression because Ms. Mintirez did not show that there was a reasonable possibility that either condition constituted a severe impairment. (*Id*. at 6-7).

It is well settled that the burden to prove disability in a social security case is on the

[4] The validity of ALJ Farris' subsequent decision granting benefits is not before this Court. This Court considers only the validity of Ms. Minitrez's claim that she was disabled between February 23, 2008, and March 19, 2010.

claimant. *See Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991). Nonetheless, since a social security disability hearing is non-adversarial, the ALJ must "ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *see also Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987). This duty pertains even if the claimant is represented by counsel. *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (2009) (citations, internal quotation marks, and ellipsis omitted). The ALJ, however, is not required to act as Plaintiff's advocate in order to meet his duty to develop the record. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

An issue need not be included in the claimant's application for benefits in order for it to be considered "raised" before the ALJ; the duty to develop the record extends to impairments that the ALJ becomes aware of during the administrative hearing. *Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996). Once an issue is before the ALJ, she must consider whether it constitutes a medically determinable impairment, and, if so, whether that impairment is "severe" or "non severe." *See* 20 C.F.R. §§ 404.1520(c), 419.920(c). When confronted with a claim of mental impairment, the ALJ must apply a "special technique" for considering whether the mental impairment is severe and whether it limits the claimant's ability to work. 20 C.F.R. § 404.1520a; *Grotendorst v. Astrue*, 370 F. App'x 879, 882 (10th Cir. 2010) (unpublished). The first step of the technique requires that the ALJ "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The second step requires that the ALJ "rate the degree of functional limitations resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2).

In this case, Ms. Minitrez certainly raised the issue of whether her anxiety and

depression should be considered severe impairments and whether they limited her ability to maintain gainful employment. Her treating physician diagnosed her with depression in October of 2008 and prescribed her Wellbutrin and Fluoxetine to treat the condition. AR at 300, 306. She listed depression as an impairment in at least three separate function or disability reports to the Social Security Administration in 2008 and 2009. *Id*. at 188, 195, 207. Her attorney notified the Administration that she was suffering from depression and requested a mental health consultative evaluation in order to determine the severity of the condition. (Doc. 19-2 at 1). She testified several times to feeling depressed and anxious during the hearing before the ALJ and affirmatively stated that those two conditions prevented her from returning to work. AR at 43, 49-51. She explained that she didn't like being around people and that having to deal with clients or customers triggers panic attacks. *Id*. at 50-51, 55-59. This properly raised the mental impairments of depression and anxiety before the ALJ. *Hawkins v. Chater*, 113 F.3d 1162, 1164 n.2 (10th Cir. 1997); *Carter*, 73 F.3d at 1021-22.

Because Ms. Minitrez raised depression and anxiety as disabling conditions, the ALJ was obliged to consider whether either condition constituted a severe impairment using the "special technique" codified at 20 C.F.R. § 404.1520a. *Grotendorst*, 370 F. App'x at 882, *Mushero v. Astrue*, 384 F. App'x 693, 694 (10th Cir. 2010). The ALJ should have provided a specific written decision documenting her application of the technique. *Mushero*, 384 F. App'x at 695 ("To document the application of the special technique, the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique.... The decision must include a specific finding as to the degree of limitation in each of the functional areas . . . ") (citing 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2)). Rather than consider whether the mental conditions constituted severe or non-severe impairments, the

ALJ merely ignored Ms. Minitrez's claims regarding her depression and anxiety entirely. AR at 26-31. She made no findings with regard to the severity or limiting effect of either condition. *Id*.

Defendant's primary contention is that the ALJ did not err in failing to find the anxiety or depression to be severe impairments at step two of the sequential evaluation process because Ms. Minitrez failed to show that either condition limited her ability to perform basic work activities. (Doc. 20 at 4). This argument misses the mark. The issue is not whether the ALJ would have or should have found the anxiety or depression to be severe at step two of the process but whether she was required to consider the impairments at all. The distinction is critical. Even if the ALJ had found that neither condition constituted a severe impairment, the ALJ would still have had to consider the effect of the anxiety and depression in formulating Ms. Minitrez's RFC and hypothetical question since both severe *and* non-severe impairments must be considered at steps four and five of the process. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," ... when we assess your [RFC]."). By ignoring the evidence of depression and anxiety, the Court cannot ascertain whether any limitations arising from those disabilities should have been included in the RFC and whether the ALJ's current RFC was supported by substantial evidence. This failure is particularly notable since ALJ Farris later found that Ms. Minitrez was suffering from severe depression in 2010 and that it limited her residual functional capacity to work in her decision granting Ms. Minitrez's subsequent application for benefits. (Doc. 21-1 at 7-8). This error must be addressed upon remand.

Upon remand, the ALJ should consider whether Ms. Minitrez's depression and anxiety should be considered severe or non-severe impairments or whether they are

medically determinable impairments at all. Although ALJ's have broad latitude in deciding whether to order a consultative exam, the ALJ may wish to order a consultative exam in this case to fill out the admittedly sparse evidence regarding the limiting effect of Ms. Minitrez's anxiety and depression between 2008-2010. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) ("[T]he ALJ should order a consultative examination when evidence in the record establishes a 'reasonable probability' of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.").

## V. Conclusion

The Court finds that the ALJ failed to apply the correct legal standards when she ignored evidence of two mental impairments properly raised by Ms. Minitrez in her application for social security disability benefits. The Court therefore **RECOMMENDS** that Ms. Minitrez's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 18), be **GRANTED** and that the matter be remanded to the Commissioner for Social Security for further proceedings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN. E. GARZA
UNITED STATES MAGISTRATE JUDGE